IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

**BRENT BIRKEMEIER,**
an individual,

        Plaintiff,

v.

**AT&T MOBILITY LLC,**
a foreign corporation,

        Defendant.

Case No. 3:18-cv-02101-MO

OPINION AND ORDER

**MOSMAN, J.,**

On July 30, 2019, Defendant AT&T Mobility LLC ("AT&T") filed a Motion to Compel Arbitration [47]. Plaintiff ("Mr. Birkemeier") opposed the motion [51, 55]. As discussed below, I agree with Mr. Birkemeier and DENY Defendant's Motion to Compel Arbitration.

## BACKGROUND

This case concerns Mr. Birkemeier's claims for strict product liability and negligence arising out of burn injuries sustained when Mr. Birkemeier's cell phone charger case allegedly exploded in his lap. Compl. [ECF 1-Attach. 1] at 2. Mr. Birkemeier's wife purchased the charger case from an AT&T retail store in 2013. *Id.* at 1. She gave it to Mr. Birkemeier to use in 2017 after she purchased an Apple iPhone SE ("the phone") for her husband. *Id.* at 2. Both Mr. Birkemeier and his wife received AT&T cell phone service through their daughter's family plan. Def.'s Mot. to Compel Arbitration [ECF 47] at 3-4. The service agreement ("the Agreement") for the cell phone plan included an arbitration clause ("the Clause"), which AT&T argues should require arbitration in this case. [47] at 6-8.

The Clause provides, in relevant part:

**1.2 Arbitration Agreement.**

(1) AT&T and you agree to arbitrate all disputes and claims between us. This agreement to arbitrate is intended to be broadly interpreted. It includes, but is not limited to:

• claims arising out of or relating to any aspect of the relationship between us, whether based in contract, tort, statute, fraud, misrepresentation or any other legal theory;

...

• claims that may arise after the termination of this Agreement.

References to "AT&T," "you," and "us" include our respective subsidiaries, affiliates, agents, employees, predecessors in interest, successors, and assigns, as well as all authorized or unauthorized users or beneficiaries of services or devices under this or prior Agreements between us . . . This Agreement evidences a transaction in interstate commerce, and thus the Federal Arbitration Act governs the interpretation and enforcement of this provision.

*Credit Sale Contract et al.* [ECF 48-Attach. 5] at 7-8.[1] The only "device" listed on the service agreement is the Samsung SM-G891A phone that belonged to Mr. Birkemeier's daughter and that is not at issue in this case. *Id.* at 1. It does not reference a charging case. *Id.*

Nevertheless, AT&T argues that the Clause applies to the claims at issue here. [47] at 6-8. It argues that the Clause applies to any claims "arising out of or related to" the relationship between AT&T and the parties to the service contract and that Mr. Birkemeier's claims arise out of that relationship. *Id.* at 8. It argues that the Federal Arbitration Act imposes a strong presumption in favor of arbitration and requires that the Clause be interpreted broadly. *Id.* at 6 And although the Agreement does not explicitly reference the charger case, AT&T argues that the Clause relates to any claims arising from Mr. Birkemeier's injuries because the phone was in the case at the time it exploded. *Reply in Supp. of Mot. to Compel Arbitration* [ECF 62] at 9.

---

[1] Because Attachment 5 contains duplicative internal pages, citations to this document reference the ECF page numbers.

2 – OPINION AND ORDER

In response, Mr. Birkemeier first argues that no contract governed the purchase of the charging case. *Am. Resp. in Opp'n to Mot. to Compel Arbitration* [ECF 55] at 7. He argues that neither he nor his family members entered into a contract at the time his wife purchased the charger case and that the 2017 service agreement covers only the phone and Mr. Birkemeier's phone service. [55] at 12-14. Accordingly, Mr. Birkemeier argues, any lawsuit regarding the charging case falls outside the scope of the Clause. Second, Mr. Birkemeier argues that the Clause is not valid as applied to Mr. Birkemeier, both because the record contains no evidence that Mr. Birkemeier's daughter signed it and because Mr. Birkemeier was merely a third-party beneficiary of the Clause. [55] at 8-9.

For reasons outlined below, I agree with Mr. Birkemeier that the charging case falls outside the scope of the Clause. Arbitration is therefore not mandatory to resolve Mr. Birkemeier's claims for strict product liability and negligence, and AT&T's motion is DENIED.

## LEGAL STANDARD

Arbitration under the Federal Arbitration Act is governed by contract, and all parties must have consented to arbitrate. *Lamps Plus, Inc. v. Varela*, __U.S. __, 139 S.Ct. 1407, 1415 (2019) ("arbitration is a matter of consent, not coercion") (internal quotations omitted). Before a court may compel arbitration, then, it must determine (1) whether the parties are bound by a valid arbitration agreement, and (2) whether the controversy between the parties is within the scope of the agreement. *Industra/Matrix Joint Venture v. Pope & Talbot, Inc.*, 142 P.3d 1044, 1051 (Or. 2006). AT&T must prevail on both prongs in order to prevail on its Motion to Compel Arbitration.

## DISCUSSION

Federal courts generally apply state contract law when asked to interpret or enforce an arbitration agreement. *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995).

3 – OPINION AND ORDER

However, state law is preempted to the extent it conflicts with the Federal Arbitration Act. *Id.* To the extent the answer is ambiguous, questions of arbitrability should be resolved with a strong presumption in favor of compelling arbitration. *Concepcion*, 563 U.S. at 339. Otherwise, generally applicable contract defenses apply. *Id.*

Here, the parties dispute both the validity of the Agreement and its scope. As to validity, Mr. Birkemeier contends that the Agreement is not a valid contract. However, even assuming arguendo that the Agreement was valid, the second prong of the test—the scope of the Clause— disposes of this Motion. I therefore do not reach the merits of Mr. Birkemeier's validity argument because it is not necessary to resolve the issue of arbitrability in this case.

The parties dispute whether the charging case falls within the scope of the Clause and, by extension, whether claims related to the charging case must be submitted to arbitration. Oregon state law requires a two-layered analysis to determine whether the parties intended their arbitration agreement to include a particular controversy. First, I must examine the text and context of the arbitration clause. *Industra/Matrix*, 142 P.3d at 1052, (citing *Yogman v. Parrott*, 937 P.2d 1019, 1021 (Or. 1997)). If the arbitration clause is not ambiguous after this analysis, the inquiry ends. "In the absence of an ambiguity, the court construes the words of a contract as a matter of law." *Eagle Industries, Inc. v. Thompson*, 900 P.2d 475, 479 (Or. 1995). If, however, the text and context of the clause remain ambiguous, I must resolve any doubts concerning arbitrability in favor of arbitration. *Industra/Matrix*, 142 P.3d at 1052, (citing *Moses H. Cone Mem. Hosp. v. Mercury Construction Corp.*, 460 U.S. 1, 24-25 (1983) ("[A]ny doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration . . . .")).

I therefore begin by analyzing the text of the Clause. The text of the Clause is broad—it purports to preclude litigation in "all disputes and claims" between AT&T and any parties to the

service agreement or authorized users. [48-5] at 8. Most relevant here is the clause that states: "References to 'AT&T,' 'you,' and 'us,' include our respective subsidiaries, affiliates, agents, employees, predecessors in interest, successors, and assigns, as well as authorized or unauthorized users or beneficiaries of *services or devices under this or prior Agreements between us*." (emphasis added). The Clause does not define "device," so context is necessary to determine whether "devices" includes the charging case.

The Clause, as explained above, is part of a service agreement that Mr. Birkemeier's daughter signed when she bought a new cellphone. [48-5] at 1-13. The Agreement defines the "wireless communications device" as the daughter's Samsung cellphone. Elsewhere, the Agreement includes information about billing rates, wireless plan features, other fees, internet access, and a payment plan for the phone. It does not reference phone accessories or previously purchased items. Read in context of the Agreement, then, the Clause pertains to services (wireless services) and devices (phones) related to the service agreement that Mr. Birkemeier's daughter signed in 2017.

No plausible reading of the Agreement incorporates the charger case. Mr. Birkemeier's wife bought the case in 2013, four years before the Agreement was signed. Nothing in the Clause or the Agreement manifests an intent to retroactively include previously purchased, unnamed retail items. Mr. Birkemeier could not have known by reading the Clause or the Agreement that either had any bearing on his charging case, which he already owned. The Agreement and the Clause unambiguously governed the relationship between the parties as it related to the wireless plan and the parties' cell phones. It did not govern every retail item the family had ever purchased from an AT&T store.

AT&T's own argument supports this reading of the Clause. In its reply brief, AT&T argues that "both Kimberley [Mr. Birkemeier's daughter] and [Mr. Birkemeier] assented to the [Agreement], including its arbitration provision, in connection with AT&T's provision of service to Mr. Birkemeier's iPhone . . . the very iPhone that Mr. Birkemeier was carrying when its battery charging case allegedly exploded." [62] at 9. This argument demonstrates that AT&T knows that the Agreement governs only Mr. Birkemeier's wireless service and cellphone because AT&T found it necessary to tie the charging case to the phone in order to prove that the Clause extends to the charging case. Had the charging case exploded without a phone in it, AT&T would be able to provide no link between the Agreement and the charging case.

As presented, AT&T's argument proves too much. Although the Clause is written broadly, its incorporation into the Agreement precludes it from being read as an all-purpose bar to any litigation between Mr. Birkemeier and AT&T. For example, it is unlikely that the Clause would prohibit a lawsuit arising from any injuries Mr. Birkemeier sustained on the premises of an AT&T store. The scope of the Clause is limited by the Agreement in which it is situated, but AT&T's argument relies on an over-reading of the Clause that is—incorrectly—not limited by the broader contract in which it sits.

Because the charger case unambiguously falls outside the scope of the Clause, and the case is the sole subject of Mr. Birkemeier's claims, I am not required to conduct any further analysis. *See Yogman*, 937 P.2d at 1021. There is no ambiguity to construe in favor of arbitrability, so the presumption in favor of arbitration is inapposite in this case. *Cf. Industra/Matrix*, 142 P.3d at 1052.

## CONCLUSION

I therefore hold that the text of the Clause, as read in context of the Agreement, unambiguously excludes the charging case from the scope of claims subject to arbitration. Accordingly, I deny AT&T's motion to compel arbitration.

IT IS SO ORDERED.

DATED this 7th day of October, 2019.

MICHAEL W. MOSMAN
Chief United States District Judge